**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

AFRICAN PEOPLE'S EDUCATION AND
DEFENSE FUND, INC.,

    Plaintiff,

v.                                                 Case No. 8:23-cv-2395-TPB-AAS

PINELLAS COUNTY,

    Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S "MOTION TO DISMISS"**

This matter is before the Court on Defendant Pinellas County's "Motion to Dismiss," filed by counsel on December 1, 2023. (Doc. 16). On December 28, 2023, Plaintiff African People's Education and Defense Fund, Inc. filed a response in opposition. (Doc. 28). After reviewing the motion, response, court file, and the record, the Court finds as follows:

**Background**

This action stems from Defendant Pinellas County's decisions not to award Plaintiff federal grant money available under the Coronavirus State and Local Fiscal Recovery Funds ("SLFRF") authorized by the American Rescue Plan Act ("ARPA"), 15 U.S.C. § 9058c. The program was created by Congress to alleviate the economic impact of covid-19 by awarding funds to states, territories, tribal, and local governments. Local governments were granted broad flexibility to use the funding, and Pinellas County decided to use a portion of the SLFRF funds to provide assistance to nonprofits through grants for capital expenditures. Defendant

contracted with the Pinellas Community Foundation, as a sub-recipient of the funds, to administer the program and to review, rank, and award ARPA grant funds to various nonprofit entities, subject to approval by Defendant.

Plaintiff African People's Education and Defense Fund, Inc., a nonprofit organization that has served the black community of south St. Petersburg, Florida, for over 28 years, applied for two separate grants under the program – the first for radio equipment, and the second for a generator. The grants were ultimately not approved. As to the radio equipment grant, the Pinellas Community Foundation ranked Plaintiff's application fourth out of 55 applications, and the grant was initially approved by the Pinellas County Board of County Commissioners. On January 9, 2023, the Pinellas Community Foundation sent a draft contract, which Plaintiff signed and returned on February 9, 2023. However, on February 14, 2023, the Pinellas County Board of Commissioners voted to rescind or terminate the radio equipment contract. As to the generator grant, the Pinellas Community Foundation ranked Plaintiff's application fourth out of 19 approved applications. The Pinellas County Board of County Commissioners also denied that application on June 13, 2023.

In the instant lawsuit, Plaintiff claims Defendant's decisions not to award the ARPA grant funds to Plaintiff were the result of a mistaken and discriminatory belief that Plaintiff is associated with the Uhuru Movement, a black nationalist, allegedly antisemitic political organization under investigation by the Federal Bureau of Investigation. Plaintiff asserts three causes of action: violation of the First Amendment (freedom of association) (Count I), violation of the Due Process

Clause of the Fourteenth Amendment (Count II), and violation of the Equal Protection Clause (racial discrimination) (Count III).

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. 2009) (Lazzara, J.).

## Analysis

### *Count I – Freedom of Association*

Defendant argues that Plaintiff's freedom of association claim should be dismissed with prejudice because Plaintiff cannot state a claim for relief. The United States Supreme Court has recognized two different forms of constitutionally protected association – intimate association and expressive association. *McCabe v. Sharrett*, 12 F.3d 1558, 1562-63 (11th Cir. 1994) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984)); *City of Dallas v. Stanglin*, 490 U.S. 19, 23-25 (1989). In its response, Plaintiff agrees that it is not asserting an intimate association claim. The Court therefore focuses on expressive association.

The Supreme Court has described expressive association as the "right to associate for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts*, 468 U.S. at 618. To that end, the right of expressive association exists so that people may associate with others "in pursuit of a wide variety of political, social, economic, educational, religious, and cultural" goals. *Id.* at 622.

For a group to be protected by the First Amendment's expressive associational right, the group must engage in expressive association, whether public or private. *Boy Scouts of America v. Dale*, 530 U.S. 640, 648 (2000). Plaintiff is a non-profit organization that has served the black community of south St. Petersburg for twenty-eight years, with programs related to fitness, health, public

forums, and education. It appears, therefore, that Plaintiff engages in expressive activity.

Plaintiff does not allege that Defendant has instituted any ordinance or law restricting or prohibiting the right of any person or group, including Plaintiff, to associate with the Uhuru Movement. Rather, Plaintiff alleges that Defendant rescinded one government contract pertaining to grant money and denied an application for another due to Plaintiff's perceived association with the Uhuru Movement, which Plaintiff denies maintaining.

The Court is unaware of any cases specifically addressing this particular issue – that is, the viability of what is essentially a First Amendment retaliation claim based on a perceived expressive association where the resulting injury is the revocation or non-award of a discretionary government grant or contract. Because the Court is dismissing the other counts of the complaint with leave to amend, it defers ruling on the First Amendment arguments at this time. The motion to dismiss is therefore denied without prejudice on this point and Defendant may raise these or similar arguments in response to an amended complaint. Plaintiff should include its First Amendment claim in the amended complaint should it wish to further pursue the claim, or the Court will consider the claim abandoned.

*Count II – Due Process*

Defendant argues that Plaintiff fails to state either a substantive or procedural due process claim. As an initial matter, the Court notes that it is unclear whether Plaintiff is raising a substantive due process claim, procedural due process claim, or both. This is problematic since these types of claims are analyzed

under different legal frameworks. To further complicate matters, Plaintiff combines allegations as to the first and second grants in this single count. Due to the factual circumstances of this case and the required due process analysis, the Court will require Plaintiff to replead these claims in different counts, if it may do so in good faith, to allow the Court to better adjudicate the legal issues in this case.

Substantive due process protects fundamental rights – "that is, rights that are implicit in the concept of ordered liberty." *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994). The rights enumerated in the Bill of Rights are considered fundamental rights. *Id.* at 1556. Certain unenumerated rights also merit protection within the substantive due process framework. *Id.* However, the Supreme Court "has not extended Fourteenth Amendment coverage to a host of other areas." *Id.* For instance, "[t]he Due Process Clause does not obligate states to provide its citizens with substantive services, even if those services are necessary to secure citizens' life, liberty, or property interest." *Occean v. Kearney*, 123 F. Supp. 2d 618, 622 (S.D. Fla. 2000).

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. […] But the range of interests protected by procedural due process is not infinite." *See Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972). A prior hearing is only required when protected interests are implicated. *Id.* To state a Fourteenth Amendment procedural due process claim, a plaintiff must allege "(1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures

accompanying the deprivation." *Bank of Jackson Cty. v. Cherry*, 980 F.2d 1362, 1366 (11th Cir. 1993).

When filing an amended complaint, Plaintiff should clearly identify any alleged due process rights, including the source of the alleged rights.[1] In the event Plaintiff intends to assert a property right in a government contract, Plaintiff is reminded that to maintain a property interest in a benefit such as a government contract, "a [plaintiff] clearly must have more than an abstract need or desire for it. [The plaintiff] must have more than a unilateral expectation of it. [The plaintiff] must, instead, have a *legitimate claim of entitlement* to it." *See Roth*, 408 U.S. at 577 (emphasis added). "Put another way, a person has a legitimate claim of entitlement to keep that which presently securely belongs to that person. Where state law provides a benefit and creates a system governing revocation or renewal of that benefit, the recipients have a secure and durable property right, a legitimate claim of entitlement."[2] *Zisser v. The Florida Bar*, 747 F. Supp. 2d 1303, 1317 (M.D. Fla. 2010).

---

[1] It appears unlikely that Plaintiff will be able to state a substantive due process claim based on an alleged First Amendment violation because "a cause of action cannot be based in substantive due process where a more specific constitutional provision is applicable." *Eisenberg v. City of Miami Beach*, 54 F. Supp. 3d 1312, 1326 (S.D. Fla. 2014) (quoting *Brandenburg v. Hous. Auth. Of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001)).

[2] It appears that as to the second grant, Plaintiff will face more challenges trying to state a claim. The Eleventh Circuit has held that a committee's recommendation of a party in the bidding process amounts, at best, to a unilateral expectation, not a protectable property interest. *See Cunningham v. Adams*, 808 F.2d 815, 820 (11th Cir. 1987); *MCO Airport Concessions, LLC v. Greater Orlando Aviation Auth.*, No. 6:11-cv-742-Orl-22-GJK, 2012 WL 12896558, at *6 (M.D. Fla. Feb. 14, 2012).

*Count III – Equal Protection Violation (Race Discrimination)*

Defendant argues that Plaintiff fails to state an equal protection claim based on race because (1) the complaint lacks factual allegations supporting race-based discrimination and (2) Plaintiff has failed to assert that similarly situated groups outside of its protected class received more favorable treatment. The Court agrees.

The Eleventh Circuit has summarized the protection afforded by the Equal Protection Clause as follows:

> [T]he Equal Protection Clause requires government entities to treat similarly situated people alike. Equal protection claims are not limited to individuals discriminated against based on their membership in a vulnerable class. Rather, we have recognized any individual's right to be free from intentional discrimination at the hands of government officials.

*Romine v. City of Anniston, Ala.*, No. 1:12-3787-VEH, 2014 WL 4957123, at *16 (N.D. Ala. Oct. 2, 2014) (citing *Campbell v. Rainbow City*, 434 F.3d 1306, 1313 (11th Cir. 2006)). As such, to state an equal protection claim based on race in this case, Plaintiff must allege that it was treated differently than similarly situated individuals or entities because of its race.[3]

Plaintiff has identified itself as a nonprofit organization serving the black community and simply states that Defendant discriminated on the basis of race. But Plaintiff has not alleged sufficient *facts* to support a claim of racial discrimination. Notably, Plaintiff does not allege sufficient facts to discern the

---

[3] As pleaded, Plaintiff's equal protection claim appears to be based solely on discrimination against a protected class. Although it does not appear that Plaintiff pursues a "class of one" theory, Plaintiff is permitted to include such a claim in an amended complaint, if appropriate.

racial identities of either Plaintiff itself or the "similarly situated" entities that applied for and received grant money.[4]  Moreover, the allegations of the complaint itself do not appear to reflect race-based animus and instead suggest various other reasons for Defendant's grant decisions, most obviously Plaintiff's perceived association with the Uhuru Movement.  Consequently, the motion to dismiss is granted as to Count III.  Because it is possible that Plaintiff may be able to state a sufficient equal protection claim, the Court will grant leave to amend.

### *Counts IV and V*

Defendant argues that Counts IV and V are subject to dismissal because they are not independent causes of action but remedies.  It appears that Plaintiff agrees, and so does the Court.  Consequently, the motion is granted to the extent that Counts IV and V are dismissed without prejudice as independent causes of action.  This ruling does not, of course, preclude Plaintiff from seeking declaratory or injunctive relief as remedies should it prevail on one or more substantive claims.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. Defendant's "Motion to Dismiss" (Doc. 16) is hereby **GRANTED IN PART** and **DENIED IN PART**.

---

[4] "[D]iscerning the racial identity of a corporation could be quite daunting in many circumstances." *Ultimax Transp., Inc. v. British Airways, Inc.*, 231 F. Supp. 2d 1329, 1339 (N.D. Ga. 2002).  To sufficiently allege the racial identities of itself and similarly-situated entities, Plaintiff should provide sufficient factual information, such as the racial identities of those operating the entity, the racial identities of the employees of the entity, and the racial identities of those served by the entity.  *See id.*  This pleading requirement applies to Plaintiff itself and to any identified comparators.

2. The Court **DEFERS RULING** on Count I.  Plaintiff is directed to reassert Count I in its amended complaint if it intends to pursue its First Amendment claim, or the Court will consider the claim abandoned.

3. The motion is **GRANTED** to the extent that Counts II and III are **DISMISSED WITHOUT PREJUDICE**, with leave to amend.

4. The motion is **FURTHER GRANTED** to the extent that Counts IV and V are **DISMISSED WITH PREJUDICE** as independent causes of action, without leave to amend.

5. The motion is otherwise **DENIED WITHOUT PREJUDICE**.

6. Plaintiff is **DIRECTED** to file an amended complaint on or before March 12, 2024.  Failure to file an amended complaint will result in this Order becoming a final judgment.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 26th day of February, 2024.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**