UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AFRICAN PEOPLE'S EDUCATION AND
DEFENSE FUND, INC.,

    Plaintiff,

v.                                                                                          Case No. 8:23-cv-2395-TPB-AAS

PINELLAS COUNTY,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S
"MOTION TO DISMISS AMENDED COMPLAINT"**

This matter is before the Court on Defendant Pinellas County's "Motion to Dismiss Amended Complaint," filed by counsel on March 26, 2024. (Doc. 36). On May 9, 2024, Plaintiff African People's Education and Defense Fund, Inc. filed a response in opposition. (Doc. 39). After reviewing the motion, response, court file, and the record, the Court finds as follows:

**Background**

This action stems from Defendant Pinellas County's decisions not to award Plaintiff federal grant money available under the Coronavirus State and Local Fiscal Recovery Funds ("SLFRF") authorized by the American Rescue Plan Act ("ARPA"), 15 U.S.C. § 9058c. The program was created by Congress to alleviate the economic impact of Covid-19 by awarding funds to states, territories, and tribal and local governments. Local governments were granted broad flexibility to use the funding, and Pinellas County decided to use a portion of the SLFRF award to provide

assistance to nonprofits through grants for capital expenditures. Defendant contracted with the Pinellas Community Foundation, as a subrecipient of the funds, to administer the program and to review, rank, and award ARPA grant funds to various nonprofit entities, subject to approval by Defendant.

Plaintiff African People's Education and Defense Fund, Inc., a nonprofit organization that has served the black community of south St. Petersburg, Florida, for over 28 years, applied for two separate grants under the program – the first for radio equipment, and the second for a generator. The grants were ultimately not approved. As to the radio equipment grant, the Pinellas Community Foundation ranked Plaintiff's application fourth out of 55 applications, and the grant was initially approved by the Pinellas County Board of County Commissioners. On January 9, 2023, the Pinellas Community Foundation sent a draft contract, which Plaintiff signed and returned on February 9, 2023. On February 14, 2023, the Pinellas County Board of Commissioners voted to rescind or terminate the radio equipment contract. As to the generator grant, the Pinellas Community Foundation ranked Plaintiff's application fourth out of 19 approved applications. However, the Pinellas County Board of County Commissioners denied the application on June 13, 2023.

In the instant lawsuit, Plaintiff claims Defendant's decisions not to award the ARPA grant funds to Plaintiff were the result of a discriminatory belief that Plaintiff is associated with the Uhuru Movement, a black nationalist and allegedly antisemitic political organization under investigation by the Federal Bureau of Investigation.[1]

---

[1] The Court notes that on September 12, 2024, following a weeklong criminal trial in the Middle District of Florida, several members of the African People's Socialist Party and the Uhuru Movement – Omali Yeshitela, Penny Hess, and Jesse Neval, a/k/a Jesse Nevelesky –

Plaintiff asserts three causes of action: violation of the First Amendment (freedom of association) (Count I), violation of the Due Process Clause of the Fourteenth Amendment (Count II), and violation of the Equal Protection Clause (racial discrimination) (Count III).

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 41 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the

---

were convicted of conspiracy to defraud the United States of America. *See United States v. Aleksandr Viktorovich Ionov, et al.*, 8:22-cr-259-WFJ-AEP (M.D. Fla). According to the indictment, Russia had sought out a sympathetic group in the United States to push Russian propaganda in an effort to sow political division and promote Russia's geopolitical agenda. *See id.* at (Doc. 12). The African People's Socialist Party and Uhuru Movement promoted Russia's views using multiple media outlets, including a radio station.

merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

## Analysis

### *Count I – Freedom of Association*

Defendant argues that Plaintiff's freedom of association claim should be dismissed with prejudice because Plaintiff cannot state a plausible claim for relief. The United States Supreme Court has recognized two different forms of constitutionally protected association – intimate association and expressive association. *McCabe v. Sharrett*, 12 F.3d 1558, 1562-63 (11th Cir. 1994) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984)); *City of Dallas v. Stanglin*, 490 U.S. 19, 23-25 (1989). Plaintiff asserts an expressive association claim based on an association with the Uhuru Movement.[2] In its prior complaint, Plaintiff alleged that it was not part of or directly associated with the Uhuru Movement, and that Defendant was mistaken in its belief that Plaintiff was associated with the group. In the amended complaint, Plaintiff now claims that it "is indeed part of this pro-Black tendency and claims its right to association" with the Uhuru Movement.

---

[2] The Supreme Court has described expressive association as the "right to associate for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts*, 468 U.S. at 618. To that end, the right of expressive association exists so that people may associate with others "in pursuit of a wide variety of political, social, economic, educational, religious, and cultural" goals. *Id.* at 622. For a group to be protected by the First Amendment's expressive associational right, the group must engage in expressive association, whether public or private. *Boy Scouts of America v. Dale*, 530 U.S. 640, 648 (2000). Plaintiff is a non-profit organization that has served the local community of south St. Petersburg for twenty-eight years, with programs related to fitness, health, public forums, and education. It appears, therefore, that Plaintiff engages in expressive activity.

Plaintiff does not allege that Defendant has instituted any ordinance or law restricting or prohibiting the right of any person or group, including Plaintiff, to associate with the Uhuru Movement.  Rather, Plaintiff alleges that Defendant rescinded one government contract pertaining to grant money and denied an application for another due to Plaintiff's association with the Uhuru Movement.  Plaintiff essentially alleges a First Amendment retaliation claim based on a perceived or actual expressive association where the resulting injury is the revocation or non-award of a discretionary government grant or contract.

When it comes to government funding and contracts, the government has discretion in awarding contracts and can base its decisions on any number of reasons. *O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712, 724-25 (1996).  However, the government cannot deny a governmental benefit or contract based on unconstitutional grounds, such as racial discrimination.  *See id*. at 725-26.

The Court notes that "[t]he government can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way.  In doing so, 'the [g]overnment has not discriminated. . . it has merely chosen to fund one activity to the exclusion of the other.'"  *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 587-88 (1998) (quoting *Rust v. Sullivan*, 500 U.S. 173, 193 (1991)).  Even though the First Amendment may apply in the government funding context, "the [g]overment may allocate competitive funding according to criteria that would be impermissible were direct regulation of speech or a criminal penalty at stake." *Id*. at 587-88. Government funding provisions

may become unconstitutional, however, if the provisions effectively prohibit a recipient from engaging in otherwise protected conduct outside the scope of a government-funded program, or if the subsidy is manipulated to have a coercive effect. *Id.* at 587 (citations omitted).

Importantly, the United States Supreme Court has not explicitly extended First Amendment protections to bidders or applicants of government contracts. *Board of County Comm'rs v. Umbehr*, 518 U.S. 668, 685 (1996); *McClintock v. Eichelberger*, 169 F.3d 812, 817 (3d Cir. 1999) (refusing to extend First Amendment protection to a bidder or applicant for a government contract). Since *Umbehr*, appellate courts "have differed over the First Amendment protection that should be granted to those who allege retaliation in the form of a rejected application for a public benefit, such as government contracts." *A.A.A. Always Open Bail Bonds Inc. v. DeKalb Cty., Georgia*, No. 1:02-CV-2905-ODE, 2006 WL 5440395, at *8 (N.D. Ga. Aug. 4, 2006). It does not appear that the Eleventh Circuit has directly weighed in on this issue, although it has followed *Umbehr* and has cited with approval the Third Circuit's *McClintock* decision, which denied protections to contractors who did not establish a continuing relationship with the government. *Id.*

In this case, Plaintiff did not enjoy a preexisting and continuing contractual relationship with Defendant – it is best described as a first-time bidder or applicant for a government contract. It therefore appears that Plaintiff may very well not be entitled to any First Amendment protections in these circumstances. *See McClintock*, 169 F.3d at 817; *A.A.A. Always Open Bail Bonds Inc.*, 2006 WL 5440395, at *8.

Assuming, *arguendo*, that Plaintiff could assert some sort of First Amendment retaliation claim based on the revocation of the discretionary government contract without an ongoing relationship with the government, it still fails to state a plausible claim for relief.  Generally, a plaintiff bringing a retaliation claim predicated on the First Amendment must establish that: (1) the plaintiff engaged in constitutionally protected activity; (2) the defendant took an adverse action that would chill a person or ordinary firmness from exercising his or her rights; and (3) a causal connection between the retaliatory action and the adverse effect on First Amendment activity. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005).  "A majority of circuit courts of appeals further require a plaintiff alleging retaliation to additionally show that his expression was in fact curtailed in someway by the adverse action taken." *2025 Emery Highway, L.L.C. v. Bibb Cty., Georgia*, 377 F. Supp. 2d 1310, 1352-53 (M.D. Ga. 2005) (citations omitted).

Here, Plaintiff appears to allege that Defendant violated its First Amendment rights by revoking or denying federal grant money because of its perception of Plaintiff's association with the Uhuru Movement based on "the apparent content of [Plaintiff's] website" and location.  However, Plaintiff fails to adequately allege that it engaged in constitutionally protected activity (and the nature of that activity), that Defendant's actions were motivated or caused by exercise of that right, and, significantly, that Defendant's conduct in revoking or denying discretionary federal grant money was sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights. In addition, Plaintiff has not sufficiently pled or shown that the denial or revocation of the grant money effectively precluded or punished

Plaintiff from engaging in protected First Amendment activity – Plaintiff is free to engage in protected expressive association (including association with the Uhuru Movement) without the benefit of the grant funding, and it in fact does so. *See Machete Products, L.L.C. v. Page*, 809 F.3d 281, 290 (5th Cir. 2015) (finding no violation of clearly established First Amendment rights based on denial of government grant funding).

Plaintiff does not state a plausible First Amendment claim based on the revocation or denial of discretionary grant funding due to Plaintiff's perceived or actual association with the Uhuru Movement. The Court has already granted one opportunity to amend; it declines to grant another. Consequently, this claim is dismissed, without leave to amend.

*Count II – Due Process*

Defendant argues that Plaintiff fails to state a procedural due process claim. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. […] [T]he range of interests protected by procedural due process is not infinite." *See Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972). A prior hearing is only required when protected interests are implicated. *Id.* To state a Fourteenth Amendment procedural due process claim, a plaintiff must allege "(1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation." *Bank of Jackson Cty. v. Cherry*, 980 F.2d 1362, 1366 (11th Cir. 1993); *see Worthy v. City of Phenix City, Alabama*, 930 F.3d 1206, 1223 (11th Cir. 2019).

Upon review, the Court finds that Plaintiff has failed to allege a constitutionally protected property interest. In the amended complaint, Plaintiff attempts to claim a constitutionally protected interest in the first ARPA grant for radio equipment. Plaintiff asserts that the grant was approved by the Pinellas County Board of County Commissioners on November 15, 2022, and that Plaintiff signed and returned a draft contract for the radio equipment grant on February 9, 2023, creating a constitutionally protected property interest.[3] However, courts have held with regularity that "a simple breach of contract does not amount to an unconstitutional deprivation of property." *Redondo-Borges v. U.S. Dept. of Hous. & Urban Dev.*, 421 F.3d 1, 10 (1st Cir. 2005) (concluding no legitimate property interest in awarded bid even when bid was awarded and then revoked); *see also Medical Laundry Servs., a Div. of OPLCO, Inc. v. Bd. of Trustees of Univ. of Alabama*, 906 F.2d 571, 573 (11th Cir. 1990) ("[A] simple breach of contract does not rise to the level of a constitutional deprivation."); *Osman v. Hialeah Hous. Auth.*, 785 F.2d 1550, 1551 (11th Cir. 1986) (noting in the context of procedural due process claim concerning deprivation of property without a hearing, "that [the plaintiff] may have a state cause of action for breach of contract does not mean that he has a property interest of constitutional dimensions.").

Furthermore, even if there were somehow a constitutionally protected interest in the unsigned discretionary contract, Plaintiff's claim still fails because Plaintiff does not and cannot establish constitutionally inadequate process. A federal due process claim does not exist if the state provides a means by which to remedy the alleged

---

[3] Defendant contends that there was no contract because although the draft contract was signed by Plaintiff, the contract was never signed by Defendant.

deprivation. *McKinney v. Pate*, 20 F.3d 1550, 1564 (11th Cir. 1994). To the extent Defendant would have been contractually required to provide the grant funding for the radio equipment, Plaintiff would have an adequate state law remedy – a breach of contract claim. *See Kaminski v. Coulter*, 865 F.3d 339, 348 (6th Cir. 2017) ("Because a due-process claim is predicated on the deprivation of a constitutionally protected interest without due process of law, the availability of a state breach-of-contract remedy defeats the due-process claim."); *Indiana Land Co. v. City of Greenwood*, 378 F.3d 705, 710 (7th Cir. 2004) ("All states provide judicial remedies for breach of contract and these remedies will almost always provide all the process that is constitutionally due."). In this case, the Florida courts have the power to remedy Plaintiff's loss, considering both damages and equitable relief, so the Florida procedures satisfy procedural due process and alleviate any alleged deprivation Plaintiff may have suffered due to Defendant's conduct. *See McKinney*, 20 F.3d at 1564. Because Plaintiff does not and cannot allege that Florida law provides an inadequate post-deprivation remedy, Count II is dismissed, without leave to amend.

*Count III – Equal Protection Violation (Race Discrimination)*

Defendant argues that Plaintiff fails to state an equal protection claim based on race because (1) the complaint lacks factual allegations supporting race-based discrimination and (2) Plaintiff has failed to assert that similarly situated groups outside of its protected class received more favorable treatment. The Court agrees.

The Eleventh Circuit has summarized the protection afforded by the Equal Protection Clause as follows:

> [T]he Equal Protection Clause requires government entities to treat similarly situated people alike. Equal protection claims are not limited to individuals discriminated against based on their membership in a vulnerable class. Rather, we have recognized any individual's right to be free from intentional discrimination at the hands of government officials.

*Romine v. City of Anniston, Ala.*, No. 1:12-3787-VEH, 2014 WL 4957123, at *16 (N.D. Ala. Oct. 2, 2014) (citing *Campbell v. Rainbow City*, 434 F.3d 1306, 1313 (11th Cir. 2006)). As such, to state an equal protection claim based on race in this case, Plaintiff must allege that it was treated differently from similarly situated individuals or entities because of its "race."[4] Some courts have recognized that when the law vests a decisionmaker with discretionary authority to award or withhold a state benefit, a plaintiff asserting an equal protection claim based on the denial of that benefit "faces a steel uphill climb." *Pagan v. Calderon*, 448 F.3d 16, 34 (1st Cir. 2006). Although a high hurdle, it makes good sense. "Otherwise, a disappointed applicant for a state or local benefit could manufacture a constitutional claim by the simple expedient of alleging differential treatment. Were that the rule, the correctness of every state or local benefit denial would become a federal case." *Id.* at 35.

As an initial matter, it is still not clear whether a corporate entity can have a "race" at all. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263 (1977) ("[A] corporation . . . has no racial identity and cannot be the direct target of the [County's] alleged discrimination."); *Sheba Ethiopian Rest., Inc. v. DeKalb Cty., Georgia*, No. 21-13077, 2023 WL 3750710, at *1 (11th Cir. June 1, 2023) ("[T]here's no

---

[4] As pleaded, Plaintiff's equal protection claim appears to be based solely on discrimination against a protected class and does not appear to pursue a "class of one" theory.

binding law in this circuit clearly establishing that a corporation can have a race or that officials can discriminate against a corporation because of the corporation's race."). If a corporation cannot have a race, Plaintiff cannot assert a racial discrimination claim under the Equal Protection Clause.

However, the Court need not make this determination. Even if Plaintiff has the ability as a corporate entity to pursue a racial discrimination claim, it has failed to adequately allege its claim. Notably, Plaintiff still does not allege sufficient facts to discern the racial identities of Plaintiff itself or the "similarly situated" entities that applied for and received grant money.[5] In its prior Order, the Court explained what Plaintiff must plead to plausibly allege the racial identities of itself and similarly-situated entities. In the amended complaint, Plaintiff generally alleges that its board president is black, and that "most of the nonprofit's staff and volunteers" are black, in addition to the radio station manager. It further alleges that those who are not black are still committed to Plaintiff as a "black-led and black-community directed organization." However, Plaintiff's allegations of the racial identities of only two specific people, and use of "most" in reference to other employees, does not provide sufficient information for the Court to determine the racial identity of Plaintiff.[6] This

---

[5] "[D]iscerning the racial identity of a corporation could be quite daunting in many circumstances." *Ultimax Transp., Inc. v. British Airways, Inc.*, 231 F. Supp. 2d 1329, 1339 (N.D. Ga. 2002). To sufficiently allege the racial identities of itself and similarly-situated entities, Plaintiff must provide sufficient factual information, such as the racial identities of those operating the entity, the racial identities of the employees of the entity, and the racial identities of those served by the entity. *See id.*

[6] A review of Plaintiff's public website reflects five board members, with two of the board members – Secretary Kitty Reilly and Treasurer Maureen Wagener – appearing to be white. *See* "About Us - APEDF Board of Directors," https://apedf.org/about-us/ (last visited Sept. 19, 2024). Moreover, two members of the African People's Socialist Party and the Uhuru Movement – Penny Hess and Jesse Neval, a/k/a Jesse Nevelesky – who were recently

is important because discrimination against a non-black person, even one who is committed to black communities and causes, would not constitute racial discrimination under the Equal Protection Clause. Despite the Court's specific direction to identify the racial identities of those operating the entity, the racial identities of the employees, and the racial identities of those served by the entity, Plaintiff has failed to do so.

Moreover, Plaintiff has failed to sufficiently allege the racial identities of comparators. Of thirty-four groups, it has identified only four as "not black-led and black-community directed organization[s]," and it has not identified the racial identities of those operating those entities, the employees, or those served by the entity. Merely alleging that a particular group provides services in a "predominately white" area is not sufficient to allege or establish a racial identity.

Despite the Court's clear instructions, Plaintiff has failed to sufficiently allege that Plaintiff itself is black, or that the corporate comparators who received grant funding are not black. In addition, the Court notes that the identified comparators appear, on the face of the complaint, to maintain striking dissimilarities from Plaintiff. Most notably, it does not appear that any other organization sought the type of funding requested by Plaintiff. Consequently, Count III is dismissed, without leave to

---

convicted of conspiracy to defraud the United States of America, appear to be white. *See United States v. Aleksandr Viktorovich Ionov, et al.*, 8:22-cr-259-WFJ-AEP (M.D. Fla). The Court does not rely on this information when making its determination – it only highlights this issue to show the difficulty in ascertaining the racial identities of corporations, particularly since Plaintiff has failed to provide sufficient factual allegations in its amended complaint to support its racial discrimination claim.

amend. Because the Court has dismissed Count III for the reasons indicated, it declines to consider and rule upon Defendant's other arguments.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. Defendant's "Motion to Dismiss Amended Complaint" (Doc. 36) is hereby **GRANTED** to the extent that the amended complaint is dismissed with prejudice, without leave to amend.

2. The Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 30th day of September, 2024.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE